Fernando ROJAS, Plaintiff–Appellant,

v.

ALEXANDER'S DEPARTMENT
STORE, INC.,
Defendant–Appellee.

No. 91, Docket 90-7306.

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1990.

Decided Nov. 29, 1990.

See also 654 F.Supp. 856.

Eleanor Jackson Piel, New York City, for plaintiff-appellant.

Dennis M. Wade (White, Fleischner & Fino, New York City, of counsel), for defendant-appellee.

Before LUMBARD, WINTER, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Fernando Rojas appeals from a judgment for Alexander's Department Store, Inc. in the Eastern District of New York, Nickerson, Judge, after a jury returned a verdict in favor of Alexander's. Rojas sued under 42 U.S.C. § 1983 (1988) alleging that his constitutional rights had been violated when a security guard from Alexander's arrested him without probable cause for shoplifting. In response to two special interrogatories, the jury found that although there was no probable cause to arrest Rojas, Alexander's did not have a discriminatory policy targeting Hispanics for arrest.

Rojas argues that because the jury found that Alexander's did not have probable cause to arrest him, he was entitled to damages under § 1983. Rojas also contends that he was entitled to a jury instruction and a special interrogatory that asked the jury whether the defendant had a policy of discriminating against "minorities" instead of merely against Hispanics. Finally, appellant claims it was reversible error to admit evidence that other New York City department stores kept records that designated the race or ethnic background of persons arrested for petit larceny. We agree with the rulings of the district court and affirm the judgment.

On November 9, 1984, Rojas, while waiting for his wife, went into the Alexander's Department Store on Queens Boulevard in Rego Park, New York City. He purchased an answering machine in the electronics department and left to pick up his wife. Rojas and his wife then returned to Alexander's to buy a second answering machine as a gift. While Rojas's wife waited for him on another level of the store, Rojas went to the electronics department where he took another answering machine from a display. According to Rojas's testimony,

the closest cash register had a long line so he went looking for another register. Jerry Diaz, a security guard for Alexander's, testified that Rojas passed six registers before making his way to the department store exit. Rojas testified that he saw a display of women's blouses close to the exit. Rojas claims that he then approached a security guard at the exit to ask if he could purchase both the answering machine and a blouse at the same register. Before he could question the security guard, Rojas was arrested by Diaz. According to his own admission on cross-examination, Rojas was three feet from the exit door when he was arrested.

Rojas was led to an office where he was searched and handcuffed. Witnesses for Alexander's stated that Rojas was treated with respect. Rojas agreed with this assessment except he contends that at one point he was called a "spic" or "spic mother fucker". Alexander's' witnesses denied this assertion. Rojas was held for a period of about two hours before he was released.

Alexander's employed a Special Police Officer,[1] Iris Luck. Luck recorded Rojas's arrest in her employer's records, signed the summons and read the *Miranda* warnings to Rojas prior to his questioning. Rojas was subsequently tried and acquitted on charges of petit larceny and criminal possession of stolen property. He thereafter brought this action.

Judge Nickerson put two special interrogatories to the jury. First, the jury was to determine whether the store had probable cause to arrest Rojas. The jury answered no. The second interrogatory asked the jury to decide whether Alexander's had "a policy, custom or usage to discriminate against Hispanic customers on account of their race or national origin by subjecting them to increased suspicion and baseless arrest for shoplifting." The jury also answered this question in the negative.

*Effect of the Jury's Determination that Alexander's Lacked Probable Cause*

■ Rojas contends that because the jury found that Diaz lacked probable cause

to arrest him for shoplifting, he was entitled to damages under 42 U.S.C. § 1983 for violation of his fourth amendment right not to be seized absent probable cause. We reject this argument.

To state a claim for relief under § 1983, a plaintiff must allege both a violation of a right secured by the Constitution or by federal law, and that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981) *overruled in part, on other grounds Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). The second prong of the standard is not at issue in this case as Alexander's does not dispute the district court's ruling that its employment of Luck as a Special Police Officer satisfied § 1983's "under color of" state law requirement.

Rojas is not suing Luck, the arresting, "quasi-public" officer, and Luck's employer, Alexander's, is not responsible for the illegal arrest under the tort theory of *respondeat superior* in suits brought under § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453–54, 70 L.Ed.2d 509 (1981). Private employers are not liable under § 1983 for the constitutional torts of their employees, *see Iskander v. Village of Forest Park*, 690 F.2d 126, 128–29 (7th Cir.1982); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982); *Draeger v. Grand Central, Inc.*, 504 F.2d 142, 145–46 (10th Cir.1974), unless the plaintiff proves that "action pursuant to official ... *policy* of some nature caused a constitutional tort." *Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (emphasis added). *See also* Weeks, *Personal Liability Under Federal*

---

1. Pursuant to New York Administrative Code § 434a–7.0, shopkeepers may obtain the special deputization of an employee for the purpose of arresting customers believed to be shoplifting.

*Law: Major Developments Since Monell,* in Section 1983: Sword and Shield, 295, 299 (Reilich and Carlisle ed. 1983). Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses. *See, e.g. Iskander, supra,* at 128–29; *Powell, supra,* at 506; *Smith v. Brookshire Bros.,* 519 F.2d 93, 94 (5th Cir. 1975) (per curiam) (the mere fact that the store manager may have made a mistake in detaining customers suspected of shoplifting does not, by itself, make the store owner liable to customers for damages); *Draeger, supra,* at 145–46.

Thus, to recover under § 1983, it is not enough for Rojas to show that his arrest by Luck was without probable cause. He must show that Alexander's had a policy of arresting shoplifting suspects on less than probable cause. The mere fact that the jury determined in the first interrogatory that there was no probable cause to arrest the plaintiff is insufficient to warrant a judgment against Alexander's because the jury found that Alexander's did not have a policy of arresting Hispanic shoplifting suspects on less than probable cause.

### Alleged Errors in the Jury Instruction

■ In its jury charge, the district court, over Rojas's objection, directed the jury to determine whether Alexander's had a policy of discrimination against "Hispanics" instead of "minorities". The second special interrogatory also used the term "Hispanics", and not "minorities":

> Did Alexander's have a policy, custom or usage to discriminate against Hispanic customers on account of their race or national origin by subjecting them to increased suspicion and baseless arrest for shoplifting?

Plaintiff takes issue with the charge and the second special interrogatory, and argues that the jury should have been asked to decide whether the defendant had a policy of discriminating against "minorities", as requested by Rojas. Rojas also contends that the district court gave erroneous instructions with regard to § 1983's standard for employer liability.

We first address the contention that the district erred by using the term "Hispanic" as opposed to "minorities". The only direct evidence of discrimination in this case was Rojas's disputed testimony that he was called a "spic" or a "spic mother fucker" while being held by Alexander's' security guards. There was no direct evidence of discrimination against minority groups other than Hispanics.

In a city with the racial, ethnic and religious diversity of New York, defining the term minorities may prove an elusive task. By employing "Hispanics" in the jury instruction and special interrogatory, the district court made it clear that it was referring to a group that has traditionally been considered victimized by discrimination; a condition of which the jury must have been fully aware.

Rojas was allowed to introduce circumstantial evidence of discrimination against minorities in the form of the arrest records maintained by Alexander's. His counsel was also permitted, over the defendant's objection, to argue in summation that Alexander's had a policy of discriminating against minorities. We find no reason to believe that the jury was misled, prejudiced or confused by Judge Nickerson's charge. *See Scheib v. Williams–McWilliams Co.,* 628 F.2d 509, 511 (5th Cir.1980); *Crador v. Louisiana Dep't of Highways,* 625 F.2d 1227, 1230 (5th Cir.1980), *cert. denied,* 452 U.S. 915, 101 S.Ct. 3048, 69 L.Ed.2d 417 (1981); *Cicinato v. McPheeters,* 542 F.2d 634, 636 (4th Cir.1976). It was not error for the court to refuse a charge employing the term "minorities" instead of "Hispanics".

Regarding the liability of Alexander's as an employer, Judge Nickerson first charged that, "[t]he employee must also be responsible for establishing policy regarding such activity before Alexander's can be held liable." Rojas's counsel objected to the charge, prompting Judge Nickerson to make the following correction:

> However, the policy can be set by another employee or by the higher ups in Alexander's and the fact that higher up employee (sic) has discretion in the exer-

cise of his responsibility, if he is a policy making person, which does establish a policy, but a particular person just because he makes the arrest, in this case Mr. Diaz, if he is not the person responsible for making the policy it's not because he has discretion and responsibility for establishing the policy.

Thus, the court properly instructed the jury that the discriminatory policy leading to employer liability need not have been created by the employee implementing that policy. This correction sufficiently instructed the jury on the standard to be applied.

### Relevance of Testimony of Arrest Records of Comparable Department Stores

At trial, the plaintiff introduced the arrest records of Alexander's which, among other things, recorded the race of the arrestee. Alexander's then offered testimony that the arrest records of Macy's, Gimbel's, Bloomingdale's and other department stores also noted the race of arrestees. Rojas claims that this testimony was irrelevant, and its admission was not harmless error.

We believe the admission of the testimony of the record keeping practice of comparable department stores was proper. It was relevant evidence which provided an alternative explanation for recording the race of the arrestees: that Alexander's was merely following industry custom. Such evidence served to rebut Rojas's attempt to have the jury infer that the maintenance of records of the race of the arrestees showed that Alexander's discriminated against minorities, including Hispanics. Admission of the testimony of record keeping practices of comparable department stores made it "less probable" that Alexander's had a policy of discrimination. Fed.R.Evid. 401. It was for the jury to decide whether the maintenance of such records was evidence of a policy of racial discrimination or simply a means of refreshing the recollection of the security guards regarding any particular incident. We hold that the testimony of the record keeping practices of comparable department stores was admissible.

Affirmed.

So Ordered.