**Paul SZUCS, Plaintiff,**

v.

**COMMITTEE OF INTERNS AND RESIDENTS, A Not–For–Profit Corporation, Defendant.**

**No. 95 Civ. 1168(JES).**

United States District Court, S.D. New York.

Feb. 8, 1999.

Person & Reid, New York, New York (Walter C. Reid, Carl E. Person, of counsel), for Plaintiff.

Spivak, Lipton, Watanage, Spivak & Moss, New York, New York (James M. Murphy, of counsel), for Defendant.

**MEMORANDUM OPINION AND ORDER**

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. § 1983, plaintiff Paul Szucs brings the instant action against defendant Committee of Interns and Residents ("CIR"), a labor union, alleging that CIR conspired with plaintiff's employer, Bronx Municipal Hospital Center ("BMHC"),

to deprive plaintiff of his rights under a collective bargaining agreement. Specifically, plaintiff claims that representatives of the CIR conspired with BMHC to frustrate his attempted resort to the grievance and arbitration procedures provided by the collective bargaining agreement in order to force plaintiff to resign from his position of employment. Plaintiff alleges that this conspiracy deprived him of procedural and substantive due process under the Fourteenth Amendment to the United States Constitution. Plaintiff further alleges common law claims of breach of contract, breach of duty of fair representation, gross negligence, breach of fiduciary duty, and concerted action. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, CIR moves for summary judgment. CIR also moves for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and Rule 11 of the Federal Rules of Civil Procedure; plaintiff cross-moves for sanctions. Because plaintiff presents no evidence of a conspiracy between CIR and BMHC, the Court grants defendant's motion for summary judgment with respect to plaintiff's claim under § 1983. The Court reserves decision on the parties' cross-motions for attorneys' fees and costs, referring these cross-motions to the designated Magistrate Judge for a Report and Recommendation. The Court remands plaintiff's remaining claims under New York State law to the state court from which this action was removed.

## BACKGROUND

Plaintiff is a citizen of New York who was employed as a physician in the Emergency Medicine Residency Program ("residency program") at BMHC from July 1990 to January 31, 1992. *See* Amended Compl. ¶¶ 1, 8; Defendant's Statement Pursuant to Local Rule 3(g) of the Civil Rules of the United States District Court for the Southern District of New York ("CIR's Rule 3(g) Stmt.") ¶ 1. BMHC is one of the hospitals owned and operated by the New York City Health and Hospitals Corporation ("HHC"), a public benefit corporation created and existing under New York State Unconsolidated Laws §§ 7381–7406. *See* CIR's Rule 3(g) Stmt. ¶ 3. CIR is an incorporated membership association which represents for the purposes of collective bargaining over 6,000 interns, residents, and fellows employed in residency training programs by various public and voluntary hospitals in New York, New Jersey, Massachusetts, Ohio, Maryland, and the District of Columbia. *See id.* ¶¶ 4–9; Affidavit of Harry Franklin ("Franklin Aff.") sworn to December 11, 1995, ¶ 4. For the past twenty-five years, CIR has represented for purposes of collective bargaining residents employed by hospitals owned and operated by HHC. *See* CIR's Rule 3(g) Stmt. ¶ 10.

HHC residents, such as plaintiff, are employed by their respective hospitals and programs under individual annual contracts for each training year, which runs from July 1st to June 30th of the following year. *See* Franklin Aff. ¶ 8. Individual contracts are referenced in the collective bargaining agreement ("CBA") between HHC and CIR, and the terms of the CBA prevail if there is a conflict. *See id.* Pursuant to the CBA, a resident can be disciplined only for cause and after completion of a three-step disciplinary process. *See* Franklin Aff., Ex. A, CBA, art. XV, § 1. First, when disciplinary action against a resident is contemplated, written charges and proposed disciplinary action are presented by the executive director of the individual hospital to CIR and to the resident, who is notified of his right to appear before the executive director or duly designated representative for an informal hearing. The executive director has the right to affirm, rescind, or modify the charges and/or proposed action. *See id.* Second, if the hospital executive director does not rescind the charges and proposed disciplinary action, the resident is entitled to a conference with an HHS Director of Labor Relations or designee who must affirm, rescind, or modify the charges and/or proposed action. *See id.* Finally, the union may invoke arbitration. *See* CIR's Rule 3(g) Stmt. ¶ 15.

In December 1991, plaintiff was assigned to a Toxicology rotation at the Poison Control Center in Manhattan. *See* CIR's Rule 3(g) Stmt. ¶ 22. The schedule for that rotation was from Monday through Thursday, with Fridays excused so that plaintiff could attend conferences at BMHC. *See id.* Plain-

tiff asserts that in the first week of December, he was granted time off to care for his ailing mother. Declaration of Paul Szucs ("Pl.Decl."), January 10, 1996, ¶ 32. Consequently, plaintiff missed a majority of his days during the rotation and first reported to Toxicology on December 10, 1991. *See* CIR's Rule 3(g) Stmt. ¶ 23.

During that same month, plaintiff also performed *per diem* work at the New York City Emergency Medical Services Telemetry Unit in Maspeth, Queens ("EMS"). *See id.* ¶ 24. Unlike the Toxicology rotation, for which plaintiff was paid even if he failed to appear for work on scheduled days, plaintiff received only *per diem* pay from EMS and thus lost income each day he failed to appear for work. *See id.* ¶¶ 22, 24, 26. On Friday, December 6, 1991, plaintiff worked an 8:00 a.m. to 4:00 p.m. shift at EMS, rather than appearing for conferences at BMHC. *See id.* In addition, plaintiff appeared and worked each of his scheduled shifts at EMS on December 3, 6, 9, 10, 23, 24, 25, and 31, 1991. *See id.* ¶ 25.

On January 15, 1992, the director and assistant director of the residency program met with plaintiff and questioned his attendance at the Toxicology rotation during the previous month. *See id.* ¶¶ 4, 5, 27; Pl. Decl. ¶ 36. The director told plaintiff that his attendance was going to be monitored closely and that he had to follow stringent absence call-in procedures in the future. *See* CIR's Rule 3(g) Stmt. ¶ 27; Pl. Decl. ¶¶ 38, 40.

On January 27, 1992, plaintiff called BMHC and reported that he would not be able to appear for his scheduled 4:00 p.m. to midnight shift due to illness. *See* CIR's Rule 3(g) Stmt. ¶ 28; Pl. Decl. ¶ 168. However, he began work that evening at EMS at 8:00 p.m. and continued to work through his pre-scheduled midnight to 8:00 a.m. shift there. *See* CIR's Rule 3(g) Stmt. ¶ 28. On January 30, 1992, plaintiff again called BMHC, this time to report that car trouble made it impossible for him to work his scheduled 4:00 p.m. to midnight shift. *See id.* ¶ 29; Pl. Decl. ¶ 170. However, plaintiff did work his pre-scheduled midnight to 8:00 a.m. shift that night at EMS. *See* CIR's Rule 3(g) Stmt. ¶ 29.

On January 31, 1992, plaintiff met with the director of the residency program. *See id.* ¶ 30; Pl. Decl. ¶ 50. Plaintiff attempted to explain his absences but was disbelieved by the director, who accused plaintiff of taking paid sick leave from BMHC in order to work *per diem* at EMS and in effect draw double pay. *See* CIR's Rule 3(g) Stmt. ¶ 30; Affidavit of Neal Shipley, M.D., sworn to November 29, 1995 ("Shipley Aff.") ¶ 10. The director informed plaintiff that he was fired. *See* CIR's Rule 3(g) Stmt. ¶ 30.

In or about the beginning of February, Dr. Shipley, the CIR union delegate, learned that plaintiff was being terminated from the residency program. *See* Shipley Aff. ¶¶ 1, 9. On or about February 3 or 4, 1992, Shipley met with the director of the residency program. *See* CIR's Rule 3(g) Stmt. ¶ 31; Shipley Aff. ¶ 10. Shipley attempted to dissuade the director from terminating plaintiff from the residency program, but the director refused. Thereafter, Shipley reported the results of the meeting to both plaintiff and Bernice Krawczyk ("Krawczyk"), the CIR contract administrator responsible for overseeing relations between CIR members and BMHC. *See* Shipley Aff. ¶ 10.

Krawczyk contacted BMHC's labor relations office to inquire about plaintiff's termination. *See* Declaration of Bernice Krawczyk, December 12, 1995 ("Krawczyk Decl.") ¶ 9. That office faxed to Krawczyk copies of two memoranda prepared by the director of the residency program regarding his January 15 and January 31 meetings with plaintiff. *Id.* ¶ 10.

Thereafter, plaintiff met with Krawczyk to discuss his termination. Krawczyk informed him that CIR already knew the hospital's reasons for firing plaintiff and that plaintiff was at the very least guilty of an error of judgment. *See* Pl. Decl. ¶ 78. She encouraged plaintiff to resign voluntarily without contesting his termination under the CBA. *See id.* When plaintiff insisted upon contesting his termination, Krawczyk agreed to arrange an informal meeting with the hospital to discuss the matter. *See id.* ¶ 79.

During the week of February 24, 1992, plaintiff and Krawczyk met with representatives of BMHC. *See* CIR's Rule 3(g) Stmt.

¶ 33. Plaintiff requested that Krawczyk procure relevant documents and witnesses and that a CIR attorney be present, but Krawczyk refused plaintiff's requests because she considered the meeting merely an informal conference. *See* Pl. Decl. ¶ 81. Plaintiff alleges that Krawczyk and an employee of BMHC briefly left the meeting together and, upon their return, jointly began to urge him to resign. *See id.* ¶ 83.

Several days later, BMHC contacted Krawczyk and proposed a settlement under which BMHC would help plaintiff gain admission to a residency program at another hospital in exchange for plaintiff's voluntary resignation. *See* Krawczyk Decl. ¶ 27. Krawczyk then called plaintiff and presented BMHC's settlement offer. Krawczyk explained that, although plaintiff could contest the disciplinary action through the steps provided under the CBA, he was unlikely to prevail. She also advised him that, even if he did gain reinstatement to the residency program, the residency program director could later refuse the favorable recommendation that was essential to plaintiff's future career. *See id.* ¶¶ 29–32.

Although plaintiff was initially receptive to BMHC's offer, he rejected a draft settlement agreement that included a release from liability for BMHC and its employees. *See id.* ¶¶ 39–42. Plaintiff insisted upon preserving his right to sue BMHC. Krawczyk told plaintiff that BMHC would not agree to a settlement without a release and arranged for plaintiff to discuss his concerns with CIR's general counsel. *See id.* ¶ 42. CIR's general counsel advised plaintiff to accept the settlement because resignation was his only viable option. Nevertheless, plaintiff rejected the settlement offer. *See id.*

On June 2, 1992, plaintiff received a telegram from BMHC providing notice of a hearing to be held on June 11, 1992, and stating that he would receive a written statement of charges. *See* Pl. Decl. ¶¶ 110–11. However, plaintiff states that he never received the statement of charges, that his calls to Krawczyk were never returned, and that BMHC and CIR adjourned the conference to July 28, 1992, without ever informing him. *See id.* ¶ 112.

Plaintiff received the written statement of charges less than twenty-four hours before the hearing on July 28. *See* Pl. Decl. ¶ 115. Plaintiff called BMHC to request an adjournment because he was the only physician on duty at EMS during the time for which the hearing had been scheduled. *See id.* ¶ 118. Krawczyk also requested an adjournment, but BMHC refused. *See* Krawczyk Decl. ¶ 44.

On July 28, 1992, the step one hearing went forward with representatives of BMHC and Krawczyk present. *See* CIR's Rule 3(g) Stmt. ¶ 39. When plaintiff did not appear, Krawczyk requested that the hearing be rescheduled, but the hearing officer, a BMHC employee, again refused. *See id.* ¶ 45; Krawczyk Decl. ¶ 45. Krawczyk refused to participate and left the hearing.

On August 18, 1992, the hearing officer issued a decision concluding that Szucs was guilty of misconduct that warranted termination. *See* CIR's Rule 3(g) Stmt. ¶ 40; Krawczyk Decl., Ex. G.

On August 25, 1992, CIR filed for a step two hearing with HHC, protesting the charges and the step one decision. *See* Krawczyk Decl. ¶ 47, Ex. H. Plaintiff was again notified of the hearing less than twenty-four hours before it was scheduled to occur. *See* Pl. Decl. ¶ 128. On October 23, 1992, the step two hearing went forward at HHC's offices in Manhattan. *See* CIR's Rule 3(g) Stmt. ¶ 41. Krawczyk protested BMHC's refusal to adjourn the prior hearing and BMHC's removal of plaintiff from the payroll before he had exhausted the grievance procedure under the CBA. *See* Krawczyk Decl. ¶ 49.

On December 23, 1992, the hearing officer issued the step two decision. *See* Krawczyk Decl., Ex. I. The hearing officer agreed with Krawczyk's argument that plaintiff should have remained on the payroll and ordered that plaintiff receive back pay through the end of the 1991–1992 contract year. In all other respects the hearing officer upheld BMHC's discipline and ruled that plaintiff's conduct justified termination of his employment. *See id.*

Krawczyk and CIR's general counsel continued to encourage plaintiff to resign and accept BMHC's offer of settlement, but plaintiff refused. *See* Pl. Decl. ¶ 131. Krawczyk and Franklin subsequently recommended to the Executive Committee of the CIR that the union should not take plaintiff's case to arbitration. *See* Franklin Aff. ¶ 39, Krawczyk Decl. ¶ 59. At the May 6, 1993, meeting of the Executive Committee, Krawczyk reported that plaintiff's case was meritless and recommended that CIR not take plaintiff's case to arbitration. *See* Krawczyk Decl. ¶ 60–62. Notes of the meeting produced in discovery by defendant reflect Krawczyk's comments to the Executive Committee that CIR enjoyed good relations with BMHC and that she did not want CIR to be used by plaintiff "to play out his vindictiveness" against BMHC. *See* Pl. Decl. Ex. U. The Executive Committee voted not to send plaintiff's case to arbitration, and CIR's general counsel sent a letter to plaintiff informing him of the decision. *See* Krawczyk Decl. ¶¶ 63–64; Franklin Aff., Ex. L.

Plaintiff filed the instant action in New York State Supreme Court, New York County. On February 17, 1995, CIR removed the action to this Court, and thereafter plaintiff filed an amended complaint on March 14, 1995. In his amended complaint, plaintiff alleges that CIR entered into a conspiracy with BMHC to deprive plaintiff of his liberty interests under federal and state law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. In addition, plaintiff alleges common law causes of action for breach of contract, breach of duty of fair representation, gross negligence, breach of fiduciary duty, and concerted action.

On April 21, 1995, CIR moved to pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiff's pendent state law causes of action. Thereafter, CIR indicated that it wished to move for summary judgment. Therefore, by Order dated May 30, 1995, the Court denied CIR's partial motion to dismiss without prejudice.

On December 18, 1995, CIR moved to dismiss plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

CIR argues that plaintiff's federal claims should be dismissed because he offers no factual basis for his allegations of a conspiracy between CIR and BMHC. Plaintiff counters that CIR's efforts to pressure him to resign rather than pursue his claims are evidence that BMHC conspired with CIR to ensure his termination from the residency program.

## DISCUSSION

### Plaintiff's Claim under § 1983

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where, as here, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While a party seeking summary judgment carries the burden of demonstrating an absence of any genuine issue of material fact, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must enumerate "specific facts and circumstances supported by depositions, affidavits based on personal knowledge, and admissions" that create a rational inference in his favor and may not rely on conclusory allegations or denials. *General Elec., Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1452 (2d Cir.1991). In considering CIR's motion for summary judgment, the Court views all facts and construes all rational inferences derived therefrom in the light most favorable to plaintiff. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege both a violation of a right secured by the United States Constitution or by federal law and that the alleged deprivation was committed by a person acting under color of state law.

*See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The parties do not dispute that, because BMHC is owned and operated by the New York City Health and Hospitals Corporation, CIR may be liable as a state actor under § 1983 if it conspired with BMHC to frustrate plaintiff's attempted resort to the procedures afforded by the CBA and to force plaintiff to resign from his employment with BMHC. The parties also do not dispute that plaintiff's allegation of a conspiracy between BMHC and CIR is the sole basis for finding that CIR acted under color of state law within the meaning of § 1983. Because plaintiff fails to offer any facts to support his allegation of a conspiracy between BMHC and CIR, the Court dismisses plaintiff's § 1983 claim.

▮▮▮ First, the Court notes that evidence of a conspiracy between individual employees of CIR and BMHC is not sufficient to establish CIR's liability under § 1983. It is well established that an employer is not liable for the acts of its employees under the tort theory of *respondeat superior* in suits brought under § 1983. *See Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). A private employer such as CIR will not be liable for the constitutional tort of an employee "unless the plaintiff proves that action pursuant to an official policy of some nature caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 408 (2d Cir.1990) (quoting *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (internal quotation marks omitted). Thus, to sustain his claim on defendant's motion for summary judgment, plaintiff must offer some evidence that a CIR policy, rather than the acts of rogue CIR employees, caused his alleged injury.

Under this standard, plaintiff clearly fails to offer any evidence of a CIR policy to conspire with BMHC to defeat the rights of CIR members under the CBA. Although plaintiff presents some evidence that arguably suggests a reluctance by CIR to antagonize BMHC and a desire to resolve quickly the dispute between plaintiff and BMHC, no jury could reasonably conclude from this evidence that CIR and BMHC conspired to injure plaintiff. Plaintiff simply presents no evidence of agreement or concerted action between CIR and BMHC, and thus CIR cannot be held liable as a state actor under § 1983.

The Court further concludes that, even were the principle of *respondeat superior* somehow applicable to this § 1983 action, plaintiff offers no evidence that even individual employees of CIR conspired with BMHC. Plaintiff has presented no evidence of meetings or other contacts between CIR's employees and BMHC other than the ordinary exchanges between union and employer representatives during the course of a grievance. In fact, the evidence indicates that CIR's employees vigorously prosecuted plaintiff's grievance and challenged BMHC's apparent failure to abide by the terms of the CBA in immediately removing plaintiff from the payroll and conducting his disciplinary hearing in his absence. Although plaintiff complains that CIR employees attempted to dissuade him from prosecuting his grievance, no evidence presented by plaintiff suggests that these employees were attempting to shield BMHC from punishment for any misconduct in which its employees might have engaged. Rather, the only reasonable inference a juror could draw from the evidence presented is that CIR's employees concluded that plaintiff would never be able to prevail against BMHC through the grievance process. Plaintiff has presented no evidence that CIR employees ever acted in a manner contrary to plaintiff's best interests in attempting to resolve the dispute with BMHC. Plaintiff's naked assertion of a conspiracy is insufficient to withstand defendant's motion for summary judgment.[1]

---

1. At Oral Argument, the Court challenged plaintiff's counsel to identify the evidence that supported his claim of conspiracy. Because counsel was unable to do so, the Court granted plaintiff leave to file a supplemental statement citing the deposition testimony and documentary evidence supporting plaintiff's claim of a conspiracy. *See* Transcript of Oral Argument, February 21, 1996, at 21–24. Plaintiff's submission, titled a "Statement of Facts," merely recites in thirty-four pages the factual background of the case without specifically directing the Court to any evidence of

## Plaintiff's Pendent Claims under New York State Law

As noted above, plaintiff also alleges claims under New York State common law against CIR for breach of contract, breach of duty of fair representation, gross negligence, breach of fiduciary duty, and concerted action. The sole basis for the Court's subject matter jurisdiction over these state law claims between non-diverse parties is the plaintiff's assertion of a federal claim against CIR under § 1983. Because the Court dismisses plaintiff's sole federal claim in advance of trial, the values of judicial economy, convenience, fairness, and comity strongly counsel that the Court remand plaintiff's remaining state law claims to the state court from which this action was removed. *See* 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

## The Parties' Cross–Motions for Attorneys' Fees and Costs

CIR has also moved for its attorneys' fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and 42 U.S.C. § 1988. Plaintiff cross-moves for sanctions pursuant to Rule 11. Neither party has filed a separate motion or memorandum of law on the issue of sanctions, addressing the issue only as an afterthought and without any developed argument in the parties' briefs on defendant's motion for summary judgment. The Court grants the parties thirty (30) days from the issuance of this Memorandum Opinion and Order to renew any motion for the award of attorneys' fees and costs, supported by a memorandum of law not more than twenty-five (25) pages in length. Should any party file such a motion, the Court will refer the motion to the designated Magistrate Judge for responsive briefing, a hearing, and a Report and Recommendation on the motion.[2]

a conspiracy. *See* Pl.'s Statement of Facts, February 28, 1996.

2. The Court retains jurisdiction to hear the parties' motions for the award of attorneys' fees and costs even after dismissal of plaintiff's § 1983 claim and remand of plaintiff's pendent state law claims. *See Cooter & Gell v. Hartmarx Corp.,* 496

## CONCLUSION

For all of the above reasons, the Court dismisses plaintiff's claims against CIR arising under 42 U.S.C. § 1983. The Clerk of Court is directed to close the above-captioned action and to remand the action and transfer the Southern District file to the New York State Supreme Court, New York County. The parties are directed to file any motion for the award of attorneys' fees and costs within thirty days of the issuance of this Memorandum Opinion and Order.

It is **SO ORDERED.**

U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); *Valley Disposal, Inc. v. Central Vermont Solid Waste Management Dist.,* 71 F.3d 1053, 1055–57 (2d Cir.1995).