Thomas W. SALES, Jr., Plaintiff,

v.

Edward MURRAY, et al., Defendants.

Civ. A. No. 93–1000–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Aug. 2, 1994.

Thomas W. Sales, Jr., pro se.

Mark Ralph Davis, Office of Atty. Gen., Richmond, VA, for defendants.

### Memorandum Opinion

KISER, Chief Judge.

Plaintiff Thomas W. Sales, Jr., an inmate at Keen Mountain Correctional Center (KMCC), has filed this *pro se* civil action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, plaintiff alleges that, while he was incarcerated at Staunton Correctional Center, his constitutional rights were violated in the following respects:

1) Institutional Operating Procedure [IOP] 861, by reason of its adjustment committee member composition, is a violation of minimal due process;

2) The memorandum issued by Deputy Director E.C. Morris, as it was effectuated in this case, violated plaintiff's minimal due process rights;

3) The adjustment committee hearings officer failed to afford plaintiff a full and meaningful hearing in that:

a) she failed to ascertain the reliability of the confidential informant before issuing the charge against plaintiff; and

b) she failed to make an independent determination separate from the conclusions of the "investigator;"

4) There was insufficient evidence to support his institutional conviction;

5) Defendant Dzuba conspired with other staff to deprive plaintiff of his constitutional right to due process by coercing the "confidential informant" into making a statement against plaintiff.

Plaintiff names Edward Murray (Director of the Virginia Department of Corrections), L.W. Huffman (Regional Administrator), John B. Taylor (Warden of Staunton Correctional Center), J.D. Spitler (Chief of Security), T. Stewart (Institutional Adjustment Committee Chairman), and K.A. Dzuba (Correctional Officer) as defendants. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages. He demands a trial by jury.[1]

The defendants, through counsel, filed a motion for summary judgment. The court notified the plaintiff of the defendants' motion as required by *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), and warned plaintiff that judgment might be granted for the defendants if plaintiff did not respond to the motion. Plaintiff has responded. Therefore, this motion is now ripe for disposition.

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R.Civ.P. 56(e). If the adverse party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the adverse party.

Unless otherwise stated, the following facts are undisputed. On March 22, 1993, plaintiff's locker and the area surrounding his locker was searched by two officers who conducted the search upon orders from defendant Dzuba. The search revealed a homemade knife and a scabbard sewn from material on a sewing machine. The weapon was found under the locker next to plaintiff's and was touching plaintiff's locker. The officer who conducted the search noted that plaintiff's demeanor changed when the knife was found; he became defensive and unconvincing upon questioning. The inmate under whose locker the knife was found was also questioned and he responded in a "very open and positive manner."

The next day, the officers continued to investigate the offense. Several inmates came forward to the investigators and revealed that the homemade knife belonged to plaintiff, that he had been seen with the knife, that he had been observed placing the knife in the location where it was found, and had been intimidating others with the knife prior to the search. The officers determined that the inmates' information was reliable because they had nothing to gain from identifying plaintiff as the violator. The officers further noted that plaintiff worked in the

---

1. Plaintiff also requests a three-judge panel to decide this case. However, three judge panels are only required when "otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28

U.S.C. § 2284(a). Because there is no Act of Congress which mandates that a three-judge panel decide this case and this case clearly does not involve the apportionment of congressional districts, plaintiff's request for a three-judge panel will be denied.

tailor shop and had easy access to the materials from which a scabbard could be sewn and the means with which to make the scabbard. A charge of possession was placed against plaintiff two days after the search. Based on all this information, the hearings officer determined that plaintiff was guilty and convicted him of possession of a weapon, in violation of Offense Code 102, and sentenced him to isolation.

Offense Code 102 of the Division Operating Procedure 861 [DOP 861] provides that "possession of a weapon, sharpened instrument, explosive or incendiary device" is one of the most serious institutional offenses and may be punished by the loss of all accumulated good time and up to fifteen days in isolation. *See* DOP 861–7.3. Pursuant to a memorandum distributed by E.C. Morris, an inmate may be charged with Offense Code 102 when the item he is charged with having is either found on his person or physically within his control or is found in an area to which he can reasonably control the access of other inmates. The memorandum further provides that "contraband discovered in the physical possession of an inmate, on his person or in his assigned locker, whether locked or not, would be considered in his possession and he can be charged accordingly." The memorandum concludes that in areas which are normally accessible to other people, "an inmate should not be charged for possession ... *unless* there is additional reliable evidence linking the inmate to the item." (Emphasis added). Pursuant to this policy, plaintiff was charged with possession of the weapon found during the search.

Plaintiff was given notice of the charge against him and was given the opportunity to present witnesses on his behalf, which he declined to do. At the hearing, the hearings officer determined that the confidential informants' statements were credible, that plaintiff had easy access to the materials from which to make a scabbard, that the weapon had been found next to and touching his locker, and that plaintiff was unconvincing upon questioning. Based on all this informa-

tion, the hearings officer[2] found plaintiff guilty of possession. She sentenced plaintiff to 15 days in isolation and 60 days loss of good time credits. Plaintiff appealed Stewart's decision and the decision was upheld. The instant lawsuit followed.

*Claim One*

Plaintiff first contends that "IOP 861, by reason of its adjustment committee member composition, is a violation of minimal due process." It is not clear from plaintiff's phraseology whether "adjustment committee member composition" refers to the impartiality of T. Stewart, the hearings officer in his particular case, or to the fact that only one hearings officer decides any institutional infraction case. In either event, however, it is clear that plaintiff's claim is meritless.

■ First, assuming plaintiff disputes the impartiality of T. Stewart, the hearings officer in his case, because she hears fifteen cases a day, has served as a former correctional officer, and "has a conviction rate of 99.5%," I find that plaintiff has failed to state a due process claim. Although plaintiff evidently believes that Stewart's intense exposure to the sordid side of prison life has predisposed her to convict inmates charged with institutional infractions, his allegation that Stewart cannot serve as an unbiased and impartial decision-maker because of her work history is completely conclusory and without any support in the record. Instead, the record reflects that Stewart was selected and appointed as a hearings officer with the approval of the Regional Administrator, had adequate knowledge of the disciplinary process, was an objective and impartial decision-maker, and met the qualifications and training requirements set by the Deputy Director of Institutions. *See* DOP 861–7.12. I find nothing in plaintiff's pleadings other than conclusory assertions that anyone who had served as a prison guard or heard fifteen cases a day would necessarily be predisposed to convict inmates. Consequently, I find no basis to dispute Stewart's assertions of im-

---

**2.** The hearings officer in this case was T. Stewart. Plaintiff contends that Stewart, a former prison guard, is predisposed to convict inmates in her position as a hearings officer solely because of her exposure to the "very cruel, violent, and immoral acts of the prisoners at large" while she served as a prison guard.

partiality. Finding no genuine issues of material fact remaining, *see Anderson, supra,* I will accordingly dismiss this part of plaintiff's claim one.

■ Assuming, on the other hand, that plaintiff believes that a one-person tribunal is constitutionally inadequate regardless of who serves as the hearings officer, the claim is still without merit. Plaintiff contends that *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), mandates that a neutral "body"[3] or "panel" is required in order to comport with minimal due process. However, *Wolff* does not stand for this blanket proposition. While *Wolff* clearly commands that a prisoner is entitled to have the charges against him decided by a fair and impartial tribunal, 418 U.S. at 570–71, 94 S.Ct. at 2981–82, nothing in *Wolff* requires that an inmate be convicted by a "panel" or "body" comprised of more than one member, as he apparently contends. Instead, *Wolff* spoke in terms of a plurality merely because the tribunal at issue in *Wolff* was comprised of several members. Therefore, I find that plaintiff's claim one is without merit and will accordingly be dismissed.

## Claim Two

Plaintiff next contends that his constitutional rights were violated because he was charged with and convicted of violating an institutional rule which was allegedly promulgated by E.C. Morris. Essentially, plaintiff complains that the memorandum issued by E.C. Morris on September 16, 1992, addressing disciplinary charges for "possession" offenses, violates minimal due process guarantees because it permits the charging of innocent inmates with serious charges.[4]

Offense Code 102 prohibits the possession of a weapon, sharpened instrument, explosive or incendiary device. *See* DOP 861–7.1. Offense Code 102 is classified as one of the "most serious offense(s)" and is punishable by the loss of all accumulated good time and up to fifteen days in isolation. *See* DOP 861–7.2. Pursuant to the memorandum circulated by defendant Morris, if a weapon is found in an area in which an inmate can reasonably control the access of other inmates, he may be charged with possession. The memorandum further provides that, if a weapon is found in an area normally accessible to other people, an inmate may not be charged with possession *unless* there is additional reliable evidence linking the inmate to the item. The policy clearly provides that an inmate "may not be charged *solely* on the fact that the item was found in the vicinity of his living area if other persons have access to the area."

■ Based on its undisputed language, I find that the policy does not permit innocent inmates to be convicted of serious institutional infractions without additional evidence of ownership. Therefore, the policy itself is not unconstitutional. Nor do I find that it was unconstitutionally applied in this case. Here, plaintiff was charged with and convicted of possession because several inmates who were determined by the hearings officer to be reliable had informed prison authorities that the weapon belonged to plaintiff, the weapon was found under a locker next to and touching plaintiff's locker, the weapon was in a

---

3. Plaintiff apparently intends the term "body" to mean a plurality, rather than an individual.

4. The relevant portions of the memorandum state as follows:

An inmate may be charged with a "possession ..." infraction (e.g., Offense Code 102 ...) when the item he is charged with having in his possession is either found on his person or physically within his control or is found in an area to which he can reasonably control the access of other inmates....
... In a single cell, the inmate is individually responsible for anything found on his person or anywhere in his cell. In a double cell, each inmate assigned to the cell is individually re-

sponsible for anything found on his person or in his locker ... and both inmates are jointly responsible, and may both be charged, for contraband found in the common areas of the cell, unless one inmate claims responsibility for the contraband.
In a dormitory setting, except for lockers, other parts of his sleeping/living area are normally accessible to other persons. An inmate should not be charged for possession of contraband found in an open dormitory area or other area accessible by any number of other persons, unless there is additional reliable evidence linking the inmate to the item. He may not be charged solely on the fact that the item was found in the vicinity of his living area if other persons have access to the area....

homemade scabbard which could easily have been made by plaintiff in his position at the Tailor Shop, and plaintiff became very defensive and unconvincing upon questioning. Therefore, there was clearly "additional evidence linking [plaintiff] to the [weapon]." I will accordingly dismiss plaintiff's claim two.

### Claim Three

Plaintiff next claims that the hearings officer denied him a full and meaningful hearing on his institutional infraction because she failed to assess the reliability of the confidential informant and failed to make an independent determination of guilt separate from the conclusions of the investigator.

#### a. *Failure to Assess the Reliability of the Confidential Informant.*

■ Plaintiff contends that his administrative disciplinary hearing was constitutionally inadequate because the hearings officer failed to assess the reliability of the confidential informant before convicting plaintiff of the charged offense. DOP 861–7.15 provides that "the reliability of a confidential informant must be established before the information provided may be used to support a finding by the Inmate Hearings Officer." The section further provides that "uncorroborated confidential information from a single informant is not sufficient as the sole basis for a Disciplinary Hearing finding that an inmate committed a particular act. . . ." *Id.*

In this case, it is undisputed that there were multiple statements from several confidential informants which were considered at the hearing and that the reliability of the confidential witnesses was assessed before the statements were used to support plaintiff's conviction. Defendant Stewart determined that the informants were reliable because none of the inmates who provided information against plaintiff gained anything from or benefitted by providing information relevant to the charge. Therefore, I find that the statements by the confidential informants were inherently reliable and plaintiff's due process rights were not violated when the statements were used to support his conviction. This part of plaintiff's claim three will accordingly be dismissed.

#### b. *Failure of the Hearings Officer to Make a Separate Finding of Guilt.*

Plaintiff contends that the hearings officer further violated his constitutional rights because she based her guilty verdict on the conclusions of the investigator. This claim is without merit.

■ The report of the hearings officer clearly states that she based her decision on the fact that the knife and its scabbard were constructed of materials readily available to plaintiff, the weapon was found in plaintiff's area of control, and confidential statements from other inmates linked plaintiff to the weapon. A decision by a disciplinary committee satisfies due process as long as there is some evidence in the record to support the committee's decision. *Superintendent, Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Furthermore, federal courts will not review the accuracy of a disciplinary committee's findings of fact. *Kelly v. Cooper,* 502 F.Supp. 1371, 1376 (E.D.Va.1980). Such findings will be disturbed only if the actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion. *Smith v. Rabalais,* 659 F.2d 539, 545 (5th Cir.1981), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982).

I find no abuse of discretion in this case, *Smith v. Rabalais, supra,* and further find that there is some evidence to support plaintiff's conviction for possession. *Hill, supra.* Consequently, I will not review the determination of guilt made by the hearings officer in this case. Plaintiff's claim three will accordingly be dismissed.

### Claim Four

Plaintiff's claim four contends that there was insufficient evidence to support his institutional conviction. However, for reasons stated in Claim 3(b), the conviction will not be reviewed by this court. *Smith v. Rabalais, supra.* Plaintiff's claim four will accordingly be dismissed.

### Claim Five

■ Finally, plaintiff alleges that Officer Dzuba conspired with other staff mem-

bers to deprive plaintiff of his constitutional rights by coercing the confidential inmate informants into making a statement against plaintiff. An essential element in a claim of conspiracy to deprive a plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. *Ballinger v. North Carolina Agr. Extension Service*, 815 F.2d 1001 (4th Cir.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). Without such a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagon, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073 (4th Cir.1981). The plaintiff must allege facts showing that the defendants shared a "unity of purpose or common design" to injure the plaintiff. *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Where the complaint makes only conclusory allegations of a conspiracy under § 1983 or § 1985 and fails to allege facts suggesting an agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. *See Woodrum v. Woodward County*, 866 F.2d 1121 (9th Cir.1989); *Cole v. Gray*, 638 F.2d 804 (5th Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 120 (1981).

In this case, plaintiff neither identifies the purported co-conspirators, nor sets forth any allegations of agreement on their part to deprive him of his constitutional rights. In fact, plaintiff fails to allege *any* facts to support his claim that the confidential inmate informants were coerced into giving a statement against plaintiff at all. Such conclusory allegations are insufficient to support a claim under § 1983, *Ballinger, supra*, and plaintiff's complaint will accordingly be dismissed. *Woodrum, supra.*

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of the Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) or 4(a)(6).

The clerk of the Court is directed to send certified copies of this Memorandum Opinion and accompanying Order to plaintiff and to counsel of record for the defendants.

### ORDER

In accordance with the written Memorandum Opinion entered this day, it is hereby ADJUDGED and ORDERED as follows:

1) that plaintiff's request for a three-judge panel be and hereby is DENIED; and

2) that the defendants' Motion for Summary Judgment be and hereby is GRANTED.

This case will be stricken from the active docket of the court.

The clerk of the court is directed to send certified copies of this order to plaintiff and to counsel of record for the defendants.