**Shirley Ann FISK, Plaintiff,**

v.

**David LETTERMAN, Worldwide Pants, Sumner M. Redstone, Leslie Moonves, Mel Karmazin, Viacom Inc., CBS Inc., City of New York, William Delace, Michael Z. McIntee, Project Help, Dr. John Doe, John Joe, Officer J. Soe, Dr. Koe, Dr. Ricardo Castaneda, Dr. Steven Ciric, Dr. William Roman, Susan Kolcun, Delsa Best, Grace Mones, State of Connecticut, Does 1–30, Defendants.**

No. 04 Civ. 6972(VM).

United States District Court, S.D. New York.

Nov. 17, 2005.

---

3. *Id.* 16.

Shirley Ann Fisk, Norwalk, CT, Pro se.

Gayle Chatilo Sproul, Levine, Sullivan, Koch & Schulz, LLP, New York City, for Worldwide Pants.

Janice Casey Silverberg, New York City Law Dept. Office of Corp. Counsel, New York City, for · City of New York, Dr. Ricardo Castaneda, Dr. Steven Ciric, and William Roman.

Diane K. Kanca, McDonough, Marcus, Cohn, Heller & Kanca, New Rochelle, NY, for Project H.E.L.P.

Jamila Ayana Berridge, Attorney General of the State of New York, New York City, for Susan Colson.

Jonathan N. Francis, Arnold & Porter, LLP, New York City, for Delsa Best.

## DECISION AND ORDER

MARRERO, District Judge.

### I. BACKGROUND

Plaintiff Shirley Ann Fisk ("Fisk") brought this action under 42 U.S.C. § 1983 ("§ 1983") against various private individuals and corporations, state officials and unidentified defendants (collectively, "Defendants"). Fisk alleges that she was falsely accused of stalking television show host David Letterman and that, in connection with an involuntary psychiatric commitment of her, Defendants conspired to deprive her of civil rights guaranteed by the United States Constitution. She has also filed pendent state law claims.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants David Letterman, Leslie Moonves, Mel Karmazin, William Delace, Michael McIntee, Sumner Redstone, Viacom Inc., CBS Broadcasting Inc. (named as "CBS Inc."), and Worldwide Pants Inc. (collectively, the "CBS Defendants"), filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Defendant Susan Kolcun ("Kolcun") also moved for dismissal on the same ground. Defendants Grace Mones ("Mones") and the State of Connecticut (collectively, the "Connecticut Defendants") moved to dismiss the complaint on the grounds of (1) sovereign immunity, (2) lack of personal jurisdiction, (3) lack of service, (4) improper venue, and (5) failure to state a claim.

By Order dated September 19, 2005, Magistrate Judge James C. Francis IV, to whom this matter had been referred for pretrial supervision, issued a Report and Recommendation (the "Report"), a copy of which is attached and incorporated hereto, recommending that the Court grant the various motions to dismiss the federal claims Fisk's complaint asserts as to these defendants. The Report further recom-

mends that the Court not exercise pendent jurisdiction to review Fisk's state law causes of action. Fisk, whose time to submit objections to the Report was to expire on October 3, 2005, requested a 10–day extension, which the Court granted by memo-endorsed Order dated October 4, 2005, thus moving the deadline to October 14, 2005. To date, Fisk has not filed any response or requested any further extension. The CBS Defendants filed a timely limited objection to the Report insofar as it recommends dismissal of Fisk's federal claims against them without prejudice. For the reasons stated below, the Court adopts the Report, with the exception of the recommendation that the dismissal as to the CBS Defendants be without prejudice.

## II. STANDARD OF REVIEW

■ A district court evaluating a Magistrate Judge's report may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous. *See* Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin,* 956 F.Supp. 454, 463 (S.D.N.Y.1997) (citation omitted) (citing *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.

1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y.1988).

## III. DISCUSSION

The Court finds that the facts set forth in the Report are supported by the record and are thus incorporated herein by reference. Having conducted a review of the full record, including, among other things, the parties' submissions on the record, the Report and applicable legal authorities, the Court concludes that the findings, reasoning and legal support for the recommendations made in Report are not clearly erroneous. Insofar as the CBS Defendants object to the recommendation that the dismissal of the claims against them be without prejudice, upon de novo review of the relevant documents of record and related circumstances the Court finds the Magistrate Judge's determination unwarranted because any further amendment of the complaint encompassing Fisk's claims implicating the CBS Defendants would be futile. *See Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

■ The Report properly recognizes governing doctrine that a claim under § 1983 must be predicated on state action and state actors. *See* Report at 375–76 (citing cases). Moreover, a private party who calls police officers for assistance or provides them with information that may lead to an arrest of an individual does not become a state actor rendering that party liable under § 1983 to the person detained, unless the police officers were improperly influenced or controlled by the private party. *See id.* at 377–78 (citing cases). The Report further finds that, by Fisk's own account, Fisk's involuntary commitment to the hospital was carried out by the doctors involved and that she alleged no facts from which it could be reasonably inferred that the process was in any way subverted as a

consequence of any actions taken by the CBS Defendants. *See id.* at 377. Upon a review of Fisk's amended complaint and the documentation attached to it, the Court is persuaded that the record indicates that Fisk's commitment was conducted pursuant to legal process carried out over an extended period of time, and that the police officers, doctors and other state officials involved acted independently of any of the CBS Defendants. Thus, the evidence Fisk has entered into the record as part of her pleadings refutes any theory that the CBS Defendants improperly influenced or controlled the exercise of judgment by the police and medical officials, and thus these defendants cannot properly be found to have become state actors for the purpose of stating a cause of action under § 1983.

■ The Court is mindful that in considering a motion to dismiss it must view the pleadings in the light most favorable to the plaintiff, and read the allegations of a *pro se* litigant to state the strongest claim they could support. The Court, however, is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint. *See Colodney v. Continuum Health Partners, Inc.,* No. 03 Civ. 7276, 2004 WL 829158, at *7 (S.D.N.Y. Apr.15, 2004) ("Colodney fails to state a cause of action for slander because the facts contained in his own pleading contradict any naked assertion that Donovan's statements about him were false.... Leave to amend is properly denied since any amendment would be futile. Colodney having himself undermined any allegation that Donovan's alleged libelous statements were false, further litigation regarding Donovan's statements is not warranted."); *Matusovsky v. Merrill Lynch,* 186

F.Supp.2d 397, 399–400 (S.D.N.Y.2002) (noting that in evaluating a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) a court may consider "documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading.... If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss."). Accordingly, the Court dismisses Fisk's federal law claims against the CBS Defendants with prejudice and declines to exercise supplemental jurisdiction over any of the state law claims asserted.

Based on its review of the Report as it pertains to Kolcun, Mones and the State of Connecticut the Court is persuaded that the factual and legal findings described therein are similarly not clearly erroneous. Thus, the Court adopts the Report's recommendation that the federal claims against those defendants also be dismissed with prejudice and that the Court decline to exercise supplemental jurisdiction with regard to Fisk's state law claims against them.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Court adopts the Report and Recommendation of Magistrate Judge James F. Francis IV dated September 19, 2005, with the exception of the recommendation that the granting of certain motions to dismiss the complaint be granted without prejudice; and it is further

**ORDERED** that the motions of defendants David Letterman, Leslie Moonves, Mel Karmazin, William Delace, Michael McIntee, Sumner Redstone, Viacom Inc., CBS Broadcasting Inc. (named as "CBS Inc."), and Worldwide Pants Inc. (collec-

tively, the "CBS Defendants")(Docket No. 12); Susan Kolcun (Docket No. 53); and Grace Mones and the State of Connecticut (Docket No. 23) to dismiss the complaint be GRANTED.

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

FRANCIS, United States Magistrate Judge.

The plaintiff, Shirley Ann Fisk, has brought this case under 42 U.S.C. § 1983 against private individuals and corporations, state officials and various unidentified defendants. This action arises out of the involuntary psychiatric commitment of the plaintiff. Ms. Fisk alleges that she was falsely accused of stalking late-night talk show host David Letterman and that the defendants conspired to deprive her of civil rights guaranteed by the Constitution. She has also filed pendent state law claims.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, David Letterman, Leslie Moonves, Mel Karmazin, William Delace, Michael McIntee, Sumner Redstone, Viacom Inc., CBS Broadcasting Inc. (named as "CBS Inc."), and Worldwide Pants Inc. (collectively the "CBS defendants") have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Susan Kolcun has moved for dismissal on the same ground. Grace Mones and the State of Connecticut (collectively the "Connecticut defendants") have moved to dismiss the complaint on the grounds of (1) sovereign immunity, (2) lack of personal jurisdiction, (3) lack of service, (4) improper venue, and (5) failure to state a claim.

For the reasons stated below, I recommend that the defendants' motions·each be granted.

*Background*

A. *Facts*

The facts, as alleged in the Amended Complaint ("Am.Compl."), are as follows. On the morning of July 9, 2002, two social workers employed by the City of New York (the "City") led Ms. Fisk, a resident of the City's Lenox Hill Women's Shelter (the "Lenox Hill Shelter"), into the shelter's medical clinic. (Am.Compl., ¶ 29). Inside the clinic, Ms. Fisk was introduced to a psychiatrist, Dr. John Doe, and a psychiatric technician, John Joe,[1] both of whom identified themselves as employees of H.E.L.P.[2] (Am.Compl., ¶¶ 29–30). Dr. Doe, informed Ms. Fisk that representatives of CBS had contacted the New York City Department of Homeless Services ("DHS") to complain that Ms. Fisk was stalking David Letterman. (Am.Compl., ¶ 30). DHS had then contacted H.E.L.P. (Am.Compl., ¶ 30). Dr. Doe told Ms. Fisk that CBS had accused her of bizarre behavior near the Ed Sullivan Theater, where The Late Show with David Letterman ("The Late Show") takes place, of *disguising herself in an attempt to enter* Mr. Letterman's office, and of sending several 95–page e-mails to Mr. Letterman. (Am.Compl., ¶ 32).

Dr. Doe informed Ms. Fisk that she would be arrested if she did not voluntarily enter Bellevue Hospital ("Bellevue") for psychiatric treatment. (Am.Compl., ¶ 30). Ms. Fisk replied that she was not stalking David Letterman, and, as she was neither mentally ill nor a user of drugs or alcohol, she would not enter Bellevue. (Am. Compl., ¶ 30). Ms. Fisk told Dr. Doe that

---

1. Neither of these defendants has been further identified by the plaintiff.

2. H.E.L.P. is an organization that contracted with New York City to provide mental health services to indigent New York City residents.

she was the victim of identity theft because her wallet had been stolen, and she suggested that the individual in possession of her driving license and other forms of identification might be the person exhibiting bizarre behavior near the Ed Sullivan Theater. (Am. Compl., ¶ 34). After further conversation, during which Ms. Fisk felt threatened and harassed, she exited the clinic and returned to her bedroom. (Am.Compl., ¶ 35).

On July 11, 2002, at approximately 8:30 in the evening, Mr. Joe approached Ms. Fisk who was sitting on a park bench outside the shelter. (Am.Compl., ¶ 38). He told her that she was required to enter a van and be transported to Bellevue or Police Officer Soe,[3] who was accompanying Mr. Joe, would force her into the vehicle. (Am.Compl., ¶ 39). Officer Soe informed the plaintiff that she was not under arrest but was required to accept transportation to the hospital. (Am.Compl., ¶ 39). Officer Soe then introduced Ms. Fisk to Dr. Koe.[4] (Am.Compl., ¶ 39). When Dr. Koe began to question her, Ms. Fisk asked to speak to an attorney. (Am.Compl., ¶¶ 40–41). She was told that she was "uncooperative" for refusing to answer questions. (Am.Compl., ¶ 41). She was also reminded that restraints would be used if she did not enter the van voluntarily. (Am.Compl., ¶ 41). Because Ms. Fisk assumed that "restraints" referred to handcuffs or a straightjacket, she entered the van. (Am. Compl., ¶ 41).

When Ms. Fisk arrived at Bellevue, her belongings were searched, and some of her items were confiscated. (Am.Compl., ¶ 42). On July 12, 2002, she spoke with several doctors, including one who had evaluated her approximately five months earlier in connection with certain child custody issues. (Am.Compl., ¶ 43). Although Ms. Fish behaved cooperatively, Bellevue staff members, with no explanation, placed her in a locked ward. (Am.Compl., ¶ 45).

An attending psychiatrist assigned to Bellevue, Dr. William Roman, examined Ms. Fisk and asked her about her "bizarre" behavior towards Mr. Letterman. (Am.Compl., ¶ 46). Ms. Fisk denied any such behavior, except that she admitted having sent e-mails for Mr. Letterman to the "Wahoo Gazette," an on-line newsletter about The Late Show. (Am.Compl., ¶¶ 46–47, 50). Ms. Fisk asked Dr. Roman for the dates and times of her alleged bizarre behavior, but the doctor never provided this information. (Am. Compl., ¶ 49). Dr. Roman informed the plaintiff that she could leave Bellevue if she could live with a relative. Ms. Fisk explained she was not in contact with her family. (Am.Compl., ¶ 51). She requested to return to the Lenox Hill Shelter, but Dr. Roman told her this was impossible due to "red tape." (Am.Compl., ¶ 51).

Dr. Roman told Ms. Fisk that William Delace, a CBS Broadcasting Inc. ("CBS") employee and Chief of Security at the Ed Sullivan Theater, was the source of the accusations against her. (Am.Compl., ¶ 52). Ms. Fisk responded that Mr. Delace was not trustworthy. (Am.Compl., ¶ 52). Ms. Fisk believed that because she had filed a police report against Mr. Delace and had threatened to sue both him and CBS, he was now trying to dissuade her by accusing her of stalking Mr. Letterman. (Am.Compl., ¶ 54). Ms. Fisk reported to Mr. Roman that Mr. Delace had previously yelled at her for no apparent reason when she passed the Ed Sullivan Theater, complained to her about a car

---

**3.** Officer Soe has been identified only as a police officer employed by the City. (Am. Compl.¶ 16).

**4.** Dr. Koe has been identified as an employee of H.E.L.P. (Am.Compl.¶ 17).

that was not hers, and humiliated her when he announced in public that she was not allowed in the theater. (Am.Compl., ¶ 55). The day after the public humiliation, she filed a police report and subsequently experienced an anxiety attack. (Am.Compl., ¶ 55). In April 2002, Ms. Fisk was in a delicatessen near the Sullivan Theater when Mr. Delace entered the store, shouted at her, shook his finger in her face, and threatened her with an arrest or a restraining order. (Am.Compl., ¶ 55). Ms. Fisk warned Mr. Delace not to touch her and informed him that she had already filed a police report regarding the earlier harassment. (Am.Compl., ¶ 55). Mr. Delace then left the store without further incident. (Am.Compl., ¶ 55).

Sometime after Ms. Fisk's arrival at Bellevue, a hearing was conducted at the hospital to determine whether the plaintiff should remain committed. (Am.Compl., ¶ 56). The court appointed Susan Kolcun[5] to represent the plaintiff. (Am.Compl., ¶ 56). Ms. Fisk alleges that Ms. Kolcun neither investigated Mr. Delace's harassment nor attempted to obtain evidence to contradict his allegations. (Am.Compl., ¶ 56). The plaintiff protested to Ms. Kolcun that she could not defend herself against the accusations against her without knowing the exact details. (Am.Compl., ¶ 56). Ms. Kolcun urged the plaintiff to find a relative with whom she could reside, but Ms. Fisk was unable to do so and she instead requested to return to the Lenox Hill Shelter. (Am.Compl., ¶ 57). Ms. Kolcun and Dr. Roman again informed Ms. Fisk that she could not return to the shelter because of "red tape." (Am.Compl., ¶ 57).

Dr. Roman prescribed anti-psychotic medication for Ms. Fisk, but for approximately two weeks she refused to take it. (Am.Compl., ¶ 58). Dr. Roman warned the plaintiff that he would obtain a court order to force her to take the drug, and on July 19, 2003, Dr. Ricardo Castaneda, the Director of Inpatient Psychiatric Services at the Bellevue Department of Psychiatry, petitioned the court for an order authorizing involuntary medication of the plaintiff. (Am.Compl., ¶ 59). Dr. Castaneda's petition was based on the recommendations of Dr. Roman and Dr. Steven Ciric, another attending psychiatrist, who had examined the plaintiff on July 17, 2005. (Am.Compl., ¶¶ 59–60). In support of Dr. Castaneda's petition, Dr. Ciric mentioned the plaintiff's "increasingly bizarre and erratic behavior in connection with the CBS studio," and Mr. Roman cited plaintiff's "disguising herself to gain admission to the Letterman studio" as an example of her delusional thinking and a reason for medicating her. (Am.Compl., ¶¶ 60–61). Dr. Roman also reported that the plaintiff had "recently become increasingly belligerent and aggressive with the [s]tudio [s]ecurity, causing them to wish to have her arrested." (Am.Compl., ¶ 61).

On July 24, 2002, Dr. Roman represented to the court that although the plaintiff's behavior at Bellevue had been innocent, Ms. Fisk "could become dangerous." (Am. Compl., ¶ 62). On or about the same day, the court ordered Ms. Fisk to begin taking Risperdal, an anti-psychotic drug. (Am. Compl., ¶ 64). Because Ms. Fisk was informed that she would be physically restrained and injected with the medication if she did not cooperate, she accepted it. (Am. Compl., ¶ 64). Within hours of ingesting the Risperdal, the plaintiff felt dizzy and her nose began bleeding. (Am. Compl., ¶ 65).

**5.** The plaintiff mistakenly identified Susan Kolcun as "Susan Colson." (Am.Compl., ¶ 56–57).

Ms. Fisk remained at Bellevue from July 11 to August 23, 2002. (Am.Compl., ¶ 66). Dr. Roman and Ms. Kolcun told her that she could leave the hospital only if she could locate a residence other than the Lenox Hill Shelter. (Am.Compl., ¶ 67). Ms. Fisk obtained permission to enter another women's shelter, the Queen of Peace. (Am.Compl., ¶¶ 67–68).

On August 23, 2002, shortly before the plaintiff was permitted to exit the hospital and move to the Queen of Peace, she met with Dr. Roman, who advised her to stay away from the Ed Sullivan Theater. (Am. Compl., ¶¶ 67–68, 70). He informed her that CBS officials were still threatening to have her arrested and warned her that she would probably be brought back to Bellevue if CBS complained about her again. (Am.Compl., ¶ 70). During the conversation, Ms. Fisk understood Dr. Roman to refer to Grace Mones, an employee of the Connecticut Department of Children & Families ("DCF") who was the social worker assigned to a custody case concerning the plaintiff's children. (Am.Compl., ¶ 70).

On August 29, 2002, Ms. Fisk filed a police report complaining that Mr. Delace had made false accusations that resulted in her commitment at Bellevue. (Am.Compl., ¶ 72). Later that same day, she returned to the Lenox Hill Shelter. (Am.Compl., ¶ 73). A social worker employed by the City, Delsa Best, informed Ms. Fisk that she would now be permitted to live in the shelter again and that it had not been possible earlier because of "red tape." (Am.Compl., ¶ 73).

The plaintiff attempted in vain to contact CBS officials to discuss Mr. Delace's harassment and her intention to sue him and CBS. (Am.Compl., ¶¶ 75–76). She also wanted to address CBS's threats of arrest and possible involuntary commitment, which had been communicated to her by Dr. Roman. (Am.Compl., ¶¶ 75–76). On September 1, 2002, because of her anxiety about CBS's threats, Ms. Fisk left New York City. (Am.Compl., ¶ 77).

### B. *Procedural History*

Ms. Fisk filed the Amended Complaint on September 20, 2004. She alleged that the defendants conspired to violate her civil rights as guaranteed by the United States Constitution, including (1) the right to be free from unreasonable search and seizure; (2) the right not to be deprived of life, liberty, and property without due process of law; (3) the right to equal protection of the law as guaranteed by the Fourteenth Amendment; and (4) the right to be free from forced medication. She has also filed pendent state law claims against the defendants, including claims of intentional and negligent infliction of emotional distress, false imprisonment, libel, and negligent investigation.

A motion to dismiss was filed by the CBS defendants on December 16, 2004, and by the Connecticut defendants on February 8, 2005. Ms. Kolcun moved to dismiss on July 18, 2005.

### *Discussion*

In considering a motion to dismiss, the court must accept as true all factual allegations in the complaint and must draw all inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). Accordingly, the complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would enti-

tle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). These principles are applied even more strictly where the plaintiff alleges civil rights violations, *Hernandez*, 18 F.3d at 136; *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991), particularly where she is proceeding *pro se*. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999).

### A. The Connecticut Defendants

#### 1. The State of Connecticut and Ms. Mones in her Official *Capacity*

■ Ms. Fisk is suing the State of Connecticut and Grace Mones, in her official capacity, for money damages. The Eleventh Amendment bars suits against a state for money damages unless the State has waived its immunity or Congress has exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. Congress, in passing Section 1983, did not disturb the states' Eleventh Amendment immunity. *Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 472–474, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (plurality opinion); *Will v. Michigan Department of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, the State of Connecticut cannot be sued under Section 1983 for money damages and the complaint against it should thus be dismissed on the ground of sovereign immunity.[6]

■ Insofar as the plaintiff alleges a civil rights claim against defendant Grace Mones for actions taken in her official capacity as an employee of the State of Connecticut Department of Children and Families ("DCF"), this claim likewise is barred by the Eleventh Amendment. A suit against a state official for damages is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. *See Kentucky v. Graham*, 473 U.S. 159, 166, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore, the complaint must be dismissed against Ms. Mones in her official capacity.

#### 2. Ms. Mones in her Individual Capacity

##### a. Sufficiency of the Allegations

■ The Connecticut defendants claim that dismissal is appropriate on the ground that the plaintiff has failed to state a cognizable cause of action against Ms. Mones. (Memorandum of Law in Support of Motion to Dismiss Action Again the State of Connecticut and Grace Mones ("Conn.Mem.") at 8–9). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To prevail in a Section 1983 action, Ms. Fisk must show (1) that the defendants deprived her of a right secured by the Constitution or laws of the United States and (2) that, in doing so, the defendants acted under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

---

**6.** The defendants also argue that the State of Connecticut was not properly served because service has not been effectuated upon the "chief executive officer" pursuant to F.R.C.P. 4(j)(2), nor has it been made in the manner prescribed by Conn. Gen.Stat. § 52–64. Because Eleventh Amendment immunity provides a separate and sufficient ground on which to dismiss the complaint, the issue of service need not be addressed.

Involuntary confinement, including civil commitment, constitutes a significant deprivation of liberty requiring due process protection. *See, e.g., Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

However, Ms. Fisk has not alleged any facts suggesting that Ms. Mones "deprived her" of her constitutional rights pursuant to 42 U.S.C. § 1983. Although the plaintiff contends that Ms. Mones played a role in her commitment by "provid[ing] false information to plaintiff's doctor at Bellevue" (Am.Compl., ¶ 71), she has not alleged any facts supporting her speculation that Ms. Mones was involved in the deprivation of her rights. The plaintiff claims that Ms. Mones (1) was instrumental in the involuntary commitment of her son, Omar Fisk N'Gadi, in October 1999; (2) lied under oath at a custody hearing regarding Omar; and (3) threatened to call the police when the plaintiff planned to attend Omar's elementary school graduation in June 2002. (Am.Compl., ¶ 71).

■■■■ Although the court should "read the pleadings of a *pro se* plaintiff liberally and interpret them to 'raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)), none of the facts in the amended complaint tend to show that Ms. Mones was connected in any

way to the commitment of the plaintiff. Ms. Mones' alleged involvement in the commitment of the plaintiff's son and in the custody case of plaintiff's children are clearly unrelated to the plaintiff's commitment to Bellevue. Ms. Fisk also attempts to attribute responsibility for her involuntary commitment to Ms. Mones on the basis that Dr. Roman mentioned her, thus creating an inference that Ms. Mones communicated supposedly derogatory information about the plaintiff to him. But Ms. Fisk draws her conclusion on the basis of an obvious misunderstanding of what Dr. Roman said. According to the plaintiff, he told her that she "had handled her experience 'with grace.'" (Am.Compl., ¶ 70). This plainly meant that the plaintiff had acted "gracefully," and was not an allusion to any person named "Grace." Therefore, there is no factual basis for Ms. Fisk's belief that Ms. Mones was involved in the deprivation of her rights, and Ms. Fisk has thus failed to state a Section 1983 claim.[7] Accordingly, the plaintiff's federal claims against Ms. Mones must be dismissed.[8]

### 3. *State Claims*

■■■■ The plaintiff has also raised state claims against the Connecticut defendants. However, if the federal claims against the Connecticut defendants are dismissed, supplemental jurisdiction pursuant to 28 U.S.C. § 1367 should not be exercised over the remaining state law claims. *See Pol-*

---

7. In addition, the plaintiff has also failed to allege a Section 1983 conspiracy claim. The plaintiff's allegations that Ms. Mones participated in a "concerted effort" "under the color of" state law (Am.Compl.¶¶ 84–85), without any facts supporting the allegations of conspiracy, are not sufficient to state a Section 1983 conspiracy claim. *See Bacquie v. City of New York*, No. 99 Civ. 10951, 2000 WL 1051904, at *1 (S.D.N.Y. July 31, 2000) ("naked assertions are insufficient to plead a conspiracy to violate a person's constitutional rights.... The pleadings must present specific

facts tending to show an agreement and concerted action.").

8. Ms. Fisk's complaints about the handling of custody issues by Ms. Mones and DCF appear to be presented only as an explanation of the plaintiff's suspicion that Ms. Mones was instrumental in her involuntary commitment. However, to the extent that these were intended as separate claims, they have no nexus to New York and should be dismissed without prejudice to being filed in the appropriate court in Connecticut.

*lack v. Nash*, 58 F.Supp.2d 294, 305 (S.D.N.Y.1999) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). Therefore, the plaintiff's state claims against the Connecticut defendants should dismissed as well.

### B. *CBS Defendants*

#### 1. *Personal Involvement of Individual Defendants*

■ First, the CBS defendants contend that Mr. Delace is the "only person against whom the plaintiff makes any individual allegations" and that, therefore, the complaint should be dismissed against the other defendants. (CBS Memo. at 1 n. 1).

The defendants' contention is indeed correct. Most of the plaintiff's allegations are against the "CBS defendants" generally,[9] while no individual except Mr. Delace is alleged to have violated the plaintiff's rights. Because personal involvement by the defendants in any alleged constitutional violation is a prerequisite to an award of damages under § 1983, *Hernandez v. Keane*, 341 F.3d 137, 144–45 (2d Cir.2003); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986), the complaint should be dismissed against David Letterman, Sumner Redstone, Leslie Moonves, Mel Karmazin and Michael McIntee.[10]

#### 2. *Corporate Policy*

■ The plaintiff further seeks to impose liability upon CBS, Viacom, and World Pants. Private employers are not vicariously liable under § 1983 upon a theory of respondeat superior for the constitutional torts of their employees. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215–16 (10th Cir.2003); *Street v. Corrections Corp. of America*, 102 F.3d 810, 811 (6th Cir.1996); *Rojas v. Alexander's Department Store, Inc.*, 924 F.2d 406, 408 (2d Cir.1990). However, a private corporation could be held liable under Section 1983 for its own unconstitutional policies. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir.1993); *Rojas*, 924 F.2d at 408. Therefore, a plaintiff must prove that "action pursuant to official ... policy of some nature caused a constitutional tort." *Id.* (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). Here, the plaintiff has not alleged that CBS, Viacom, or World Pants has a policy of violating individuals' civil rights. Therefore, no viable claim has been asserted against these defendants on the basis of either vicarious liability or their own corporate policies.

#### 3. *Conspiracy or Joint Collaboration*

The CBS defendants have also moved to dismiss the plaintiff's claims on the ground that the "plaintiff failed to allege any facts

---

**9.** For example, the plaintiff alleges that she was involuntarily committed based on false accusations by employees of CBS, Worldwide Pants, and Viacom. (Am.Compl., ¶ 45).

**10.** Unlike the rest of the defendants whose names appear in the amended complaint only when the plaintiff identifies them as parties, Mr. McIntee and Mr. Letterman are mentioned in the complaint several times. Ms. Fisk alleges that she "never received a request from defendant McIntee to stop sending email for David Letterman to the Wahoo Gazette" and that her email messages were "complete-

ly ignored." (Am.Compl., ¶ 47). However, this alleged behavior is not culpable in any sense. As to Mr. Letterman, Ms. Fisk alleges that (1) he did not respond to her letter advising him of her legal action against him (Am. Compl.¶ 76) and (2) "he knew or should have known" that Mr. Delace was harassing her and should have taken steps to stop him. (Am.Compl.¶ 86). However, Ms. Fisk does not allege that Mr. Letterman was involved in the decision to commit her or in any other deprivation of her civil rights.

that, if proven, could demonstrate the level of 'joint participation' with state authorities" required to render a private individual a state actor under 42 U.S.C. § 1983. (Memorandum of Law in Support of Motion of Defendant's Viacom Inc., CBS Broadcasting Inc., Worldwide Pants Inc., David Letterman, William Delace, Sumner Redstone, Mel Karmazin, Leslie Moonves, and Michael McIntee to Dismiss Plaintiff's Amended Complaint ("CBS Memo.") at 4).

■■■■ Although "[a] claim under § 1983 is aimed at state action and state actors," *Liwer v. Hair Anew*, No. 99 Civ. 11117, 2000 WL 223828, at *2 (S.D.N.Y. Feb.25, 2000) (quoting *Heaning v. NYNEX—New York*, 945 F.Supp. 640, 650 (S.D.N.Y.1996)), "[a] private individual may be subject to § 1983 liability if that individual willfully collaborated with an official state actor in the deprivation of a federal right." *Bacquie*, 2000 WL 1051904, at *1 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993). Private parties act under the color of state law if they jointly participate or conspire with a state actor to violate an individual's federal rights. *See Adickes*, 398 U.S. at 151, 90 S.Ct. 1598 (involvement of state official in conspiracy with private party to violate plaintiff's federal rights renders private party a state actor); *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) ("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes [of Section 1983]."). A private actor will be found to have acted jointly with a state actor if he and the state actor "somehow reached an understanding" to violate the plaintiff's civil rights. *Vickery v. Jones*, 100 F.3d 1334, 1344 (7th Cir.1996) (quoting *Adickes*, 398 U.S. at 152, 90 S.Ct. 1598).

■■■■ To state a Section 1983 conspiracy claim, a complaint "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir.2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999)). A plaintiff "is not required to list the place and date of defendants meetings and the summary of their conversations when he pleads conspiracy,'" *Hoffman v. Halden*, 268 F.2d 280, 294–95 (9th Cir.1959), but the pleadings must "present facts tending to show agreement and concerted action." *Bacquie*, 2000 WL 1051904, at *1–2. Without "a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy." *Sales v. Murray*, 862 F.Supp. 1511, 1516–17 (W.D.Va.1994) (citing *Murdaugh Volkswagen, Inc. v. First National Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir.1981)).

■■■ Here, the plaintiff has not set forth any allegations of agreement or "meeting of the minds" between CBS and the state actors. Ms. Fisk alleges that she was involuntarily committed and medicated against her will based on false accusations by CBS, Worldwide Pants, and Viacom that she behaved aggressively and erratically. (Am.Compl., ¶¶ 45, 61). More particularly, she alleges that representatives of CBS contacted DHS to complain that she was stalking David Letterman (Am.Compl., ¶ 30) and that Dr. Doe's visit to the shelter "was prompted by a telephone call from unnamed CBS representatives to [DHS]." (Am.Compl., ¶ 35).

Ms. Fisk claims that William Delace made the allegations against her (Am. Compl., ¶ 52) and that he did so because he wanted to prevent her from suing him for

harassment. (Am.Compl., ¶¶ 52–54). The plaintiff also contends that CBS, in addition to H.E.L.P. and DHS, "interacted" with the New York City police to have her committed. (Memorandum of Law in Opposition to Motion of Defendants David Letterman, Worldwide Pants, Sumner M. Redstone, Leslie Moonves, Mel Karmazin, Viacom Inc., CBS Broadcasting, Inc., William Delace and Michael McIntee to Dismiss Plaintiff's Amended Complaint ("Pl. CBS Mem.") at 7). Finally, she contends that "CBS Defendants continued a dialogue with Dr. Roman during plaintiff's imprisonment at Bellevue" (Pl. CBS Memo. at 6) and that the "communications between CBS Defendants and plaintiff's doctors at Bellevue alone constituted ... 'joint participation.'" (Pl. CBS Memo. at 7).

■■■■ Taking the plaintiff's allegations as true, the alleged interaction between CBS and the state actors does not rise to the level of "joint participation" or conspiracy. All the plaintiff has alleged is that there were "dialogues," "communications," or "interactions" between CBS and the state actors. (Pl. CBS Memo. at 6–7). Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor. *See Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1353 (7th Cir.1985) (where no evidence of "concerted effort or plan" between restaurant owner and police officer, owner not state actor simply because owner reported customers to officer and told officer where to find them and customers were later arrested by officer). Alleging merely that a private party regularly interacts with a state actor does not create an inference of agreement to violate a plaintiff's rights. *See Kramer v. City of New York,* No. 04 Civ. 106, 2004 WL 2429811, at *7 (S.D.N.Y. Nov. 1, 2004).

Accordingly, a private party who calls the police for assistance does not become a state actor unless the police were influenced in their choice of procedure or were under the control of the private party. *Newman v. Bloomingdale's,* 543 F.Supp. 1029, 1029 (S.D.N.Y.1982); *see also Alexis v. McDonald's Restaurants of Massachusetts, Inc.,* 67 F.3d 341, 345, 352 (1st Cir.1995)(restaurant manager not a state actor, although manager told police officer she "would like [an unruly customer] to leave" and officer thereafter forcibly removed customer from restaurant, because there was no evidence that officer substituted manager's judgment for his own); *Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir.1983) ("mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983"); *Johns v. Home Depot U.S.A., Inc.* 221 F.R.D. 400, 404 (S.D.N.Y. 2004) (private party who calls for police assistance is not rendered a state actor under Section 1983, even if the call caused plaintiff's detainment).

■■■ At most, the plaintiff's allegations in this case could be construed as supporting an inference that CBS attempted to influence the state actors' decision to commit her, but this is not sufficient to state a conspiracy claim under Section 1983. *See Scott v. Greenville County,* 716 F.2d 1409, 1424 (4th Cir.1983) (conspiracy claim not shown by private defendants' attempts to influence action of county council). To find a conspiracy, there would need to be facts from which it could be inferred that the state actors substituted CBS' judgment for their own. *See Alexis,* 67 F.3d at 352. Here, according to the complaint, the doctors from H.E.L.P. and Bellevue determined that the plaintiff should be committed to the hospital and later petitioned the court for the plaintiff to be medicated in-

voluntarily. (Am.Compl., ¶¶ 30–31, 38–41, 58–64). The plaintiff has alleged no facts from which it could be inferred that this process was subverted. In addition, the mere institution of commitment proceedings by private citizens, without more, is not the proximate cause of a violation of due process during commitment proceedings. *See Whittington v. Johnston,* 201 F.2d 810, 811–12 (5th Cir.1953). Therefore, without allegations supporting an inference of an agreement or conspiracy between CBS or Mr. Delace and the state actors, no claim has been stated against these defendants under Section 1983.

Accordingly, the complaint against all the CBS defendants, including Mr. Delace, must be dismissed. Furthermore, the state law claims should be dismissed as well. *See Pollack,* 58 F.Supp.2d at 305.

### C. *Susan Kolcun*

■ The plaintiff contends that Ms. Kolcun "failed to adequately represent plaintiff, to investigate the facts of the case, or to advocate for plaintiff's immediate and unconditional release from Bellevue." (Reply Memorandum in Opposition to Motion of Defendant Susan Kolcun to Dismiss Plaintiff's Amended Complaint) ("Pl. Kolcun" Reply at 2). She further alleges that Ms. Kolcun made a conscious decision to cooperate and conspire with Dr. Roman and the CBS defendants by not investigating the facts of the case or advocating for her release. (Pl. Kolcun Reply at 3). She claims that "Ms. Kolcun's consultations with Dr. Roman ... constituted 'joint participation' with New York officials" (Pl. Kolcun Reply at 3), and that Ms. Kolcun's cooperation "brought [her] into the conspiracy [between Dr. Roman and other state actors]." (Pl. Kolcun Reply at 3).

■ Courts have clearly and consistently held that court-appointed attorneys do not act under color of state law by virtue of their appointment. *See Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (county public defender does not act under color of state law when performing traditional advocacy functions); *Housand v. Heiman,* 594 F.2d 923, 924–25 (2d Cir.1979) ("public defenders or court-appointed defense attorneys do not 'act under color of law' "); *Neustein v. Orbach,* 732 F.Supp. 333, 345 (E.D.N.Y.1990) (Legal Aid Society attorneys do not represent their clients under color of state law). This is true even if the attorney is employed by the Mental Hygiene Legal Services ("MHLS"), a state-funded legal services agency under the direction of the New York State Office of Court administration. *See Nesfeder v. City of New Utica Police Department,* No. 92 Civ. 442, 1994 WL 505622, at *4 (N.D.N.Y. Sept.15, 1994). Thus, unless a court-appointed attorney conspires with a state official to violate the plaintiff's constitutional rights, that attorney cannot be liable under Section 1983. *Id.,* at *4 (court-appointed attorney employed by MHLS and representing plaintiff in hearing for confinement found not to have acted under color of state law where no alleged specific acts of conspiracy with state actors); *Respass v. New York City Police Dept.,* 852 F.Supp. 173, 178–79 (E.D.N.Y. 1994) (Legal Aid lawyer does not act under color of state law unless he conspires with state actors to deprive plaintiff of federally protected right). Here, the plaintiff has alleged no facts from which a conspiracy between Ms. Kolcun and state actors could be inferred. Therefore, the constitutional claims against Ms. Kolcun must be dismissed and the pendent state law claims should be dismissed as well. *See Pollack,* 58 F.Supp.2d at 305.

### Conclusion

For the reasons set forth above, I recommend that the motions of the CBS de-

fendants, the Connecticut defendants, and Susan Kolcun be granted and the complaint be dismissed in its entirety as to each of these parties.[11] Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Victor Marrero, Room 414, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

---

**11.** Because it is at least theoretically conceivable that the plaintiff could make allegations that would state a claim against the CBS defendants, Grace Mones, and Susan Kolcun, the claims against these defendants should be dismissed without prejudice. By contrast, the claims against the State of Connecticut should be dismissed with prejudice since they are barred by sovereign immunity.